# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. _____ |
| THE CONTENTS OF ACCOUNT NUMBER Z44-343021 HELD AT FIDELITY BROKERAGE SERVICES, LLC., BOSTON, MASSACHUSETTS IN THE NAME OF NICHOLAS AIYEGBEMI D/B/A INADINOV AND CO. OAO AND ALL ASSETS TRACEABLE THERETO, | ) ) ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

**AFFIDAVIT IN SUPPORT OF VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

I, Cynthia A. Coutts, being duly sworn and appointed a Special Agent of the Department of Homeland Security, United States Immigration and Customs Enforcement, Homeland Security Investigations, hereby make the following statement in support of the attached complaint:

1. I am a Special Agent with more than fourteen years of investigative experience. Since 2004, I have been assigned to the Office of the Special Agent in Charge, Baltimore, Maryland. During this time, I have been assigned to the Washington/Baltimore High Intensity Drug Trafficking Area, Drug Money Laundering Investigation Group, primarily investigating drug smuggling and money laundering offenses; the Worksite Enforcement and Human Trafficking Group, and am currently assigned to the Asset Identification and Removal Group. I have had training in the investigation of both financial crimes and money laundering offenses.

2. As a federal agent I am authorized to investigate violations of laws of the United States, and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3. The facts set forth in this affidavit are based upon personal knowledge obtained during my participation in this investigation, knowledge obtained from other law enforcement personnel and government contractors, review of documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through training and experience. Since this affidavit is

being submitted for the limited purpose of showing probable cause to believe the named *in rem* Defendant Property is subject to forfeiture, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the Defendant Property constitutes property involved in or traceable to money laundering conduct in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (h) and constitutes or is derived from proceeds traceable to passport fraud in violation of 18 U.S.C. §§ 1543 and 1544.

## I.    PURPOSE OF AFFIDAVIT

4.     This affidavit is submitted in support of a Verified Complaint for Forfeiture *In Rem* seeking forfeiture of the following:

> The contents of account number Z44-343021 held at Fidelity Brokerage Services, LLC., Boston, Massachusetts, in the name of Nicholas Aiyegbemi d/b/a Inadinov and Co. OAO, which account is believed to contain approximately $386,080, and all assets traceable thereto.

(hereinafter the "Defendant Property")

5.     The Defendant Property constitutes property involved in transactions or an attempted transactions in violation of section 1956 of title 18, United States Code, and therefore is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). Section 1956(a)(1)(B)(i) prohibits the conducting of a financial transaction with property known to be the proceeds of unlawful activity with the intent to conceal the nature, location, source, ownership, or control of proceeds of a specified unlawful activity. Section 1956(h) prohibits conspiracies to commit acts in violation of sections 1956 or 1957. Specified unlawful activities are defined by 18 U.S.C. § 1956(c)(7) and include foreign offenses involving "bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official." *See* 18 U.S.C. §§ 1956(c)(7)(B)(iv).

6.     The Defendant Property also constitutes or is derived from proceeds traceable to passport fraud in violation of 18 U.S.C. §§ 1543 and 1544, and therefore is subject to forfeiture pursuant to U.S.C. § 981(a)(1)(C). Section 1543 prohibits the use of any "false, forged, counterfeited, mutilated, or altered passport or instrument purporting to be a passport". Section 1544 prohibits the willful or knowing use or attempted use of a "passport issued or designed for the use of another".

## II.    SUMMARY OF FACTS ESTABLISHING PROBABLE CAUSE FOR FORFEITURE

7.     Diepreye Solomon Peter Alamieyeseigha (hereinafter "Alamieyeseigha"), the elected Governor of oil-producing Bayelsa State, Nigeria, from 1999 until his impeachment in 2005, acquired criminal proceeds through corruption, abuse of office, money laundering and other illegal acts in violation of Nigerian and U.S. law.

8. As a public official, Alamieyeseigha was under a legal obligation to report his assets and sources of income to Nigerian officials. He was also under a Constitutional prohibition from owning or controlling bank accounts outside of Nigeria. Alamieyeseigha violated both laws by systematically underreporting his assets and failing to disclose his numerous bank accounts outside Nigeria, including an account at Bank of America.

9. Findings of courts in London and Nigeria show that Alamieyeseigha was the recipient of millions of dollars worth of illegal bribes and kickbacks. These same tribunals found that Alamieyeseigha used associates to launder his ill-gotten gains into shell corporations and foreign accounts.

10. Alamieyeseigha followed the same pattern of conduct in the United States using an associate, Ehigie Uzamere, to launder funds misappropriated by Alamieyeseigha from the Bayelsa State treasury for his own benefit. Those funds have been positively traced to the purchase of a house in Maryland.

11. Uzamere is also directly involved in helping Alamieyeseigha launder the Defendant Property. I have reviewed bank records which show that the Defendant Property passed through Uzamere's account at JPMorgan Chase bank in New York, was transferred to Alamieyeseigha's account at Bank of America in Florida in the name of "Peter Alamieyeseigha" and was ultimately deposited into an account at Fidelity Brokerage Services in Boston fraudulently opened in the name of Nicholas Aiyegbemi.

12. The person who opened the account at Fidelity presented a fraudulent U.K. passport. Both U.S. and U.K. records associate the passport number with an individual other than Aiyegbemi.

13. The Defendant Property has remained in the Fidelity account undisturbed since April 10, 2006.

14. In total, Alamieyeseigha's unreported income and unexplained increase in net worth while he was in office was nearly $12 million. In my experience, when a person with an obligation to report assets takes steps to hide those assets, it is commonly because those assets are derived from a criminal source. When, as is true here, such a person has a proven and consistent history of highly profitable criminal conduct, that fact can be used to establish that unexplained wealth came from the same sort of criminal conduct.

15. Based upon these facts and those set forth in more detail below, there is probable cause to believe that the Defendant Property held at Fidelity Brokerage Services, LLC is property involved in money laundering and represents the proceeds of Alamieyeseigha's corruption, to wit "bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official" in violation of 18 U.S.C. § 1956(c)(7)(B)(iv). There is also probable cause to believe that the Defendant Property constitutes or is derived from proceeds traceable to passport fraud in violation of 18 U.S.C. §§ 1543 and 1544.

### III.   FACTS ESTABLISHING PROBABLE CAUSE

*Background*

16.   Nigeria is a Federal Republic comprised of thirty-six states, including Bayelsa State.  Bayelsa State is located in southern Nigeria in the Niger Delta region and is one of the oil and gas producing states of Nigeria.

17.   The chief executive of Bayelsa State is an elected governor who is responsible for establishing and appointing Commissioners to oversee various state functions and coordinating the functions of the Governor, Deputy Governor and all Commissioners in the discharge of their executive responsibilities.  The position of governor is one of power and influence in Bayelsa State Government.

18.   During Alamieyeseigha's period in office, the Bayelsa State Government entered into contracts worth tens of millions of dollars with various third parties.

19.   The current Constitution of the Federal Republic of Nigeria entered into force on May 29, 1999, and includes, among others, the following provisions which apply to the Governors of the States of Nigeria, including Bayelsa State:

a.   Under Section 183 of the 1999 Constitution, a Governor shall not hold any other executive office or paid employment in any capacity whatsoever during the period when he holds office;

b.   Under Section 185(1) of the 1999 Constitution and the Seventh Schedule to the Constitution, prior to performing the functions of that office a Governor must swear that he will not allow his personal interest to influence his official conduct or his official decisions and that he will abide by the Code of Conduct contained in the Fifth Schedule to the Constitution;

c.   Under paragraph 1 of the Code of Conduct for Public Officers set out at the Fifth Schedule to the Constitution, and referred to in the oath of office, "A public officer shall not put himself in a position where his personal interest conflicts with his duties and responsibilities";

d.   Under paragraph 3 of the Code of Conduct for Public Officers set out at the Fifth Schedule to the Constitution, Governors shall not "maintain or operate a bank account in any country outside Nigeria";

e.   Under paragraph 6 of the Code of Conduct for Public Officers set out at the Fifth Schedule to the Constitution, "[a] public officer shall only accept personal gifts or benefits from relatives or personal friends to such extent and on such occasions as are recognized by custom";

f.   Under paragraph 7 of the Code of Conduct for Public Officers set out at the Fifth Schedule to the Constitution, Governors may not accept loans except from the government, "a bank, building society, mortgage institution or other financial institution recognised by law";

   g. Under paragraph 13 of the Code of Conduct for Public Officers set out at the Fifth Schedule to the Constitution and the general law of Nigeria, Governors may not use a "nominee, trustee, or other agent" to commit acts prohibited by the Code of Conduct;

   h. Under paragraph 15(5) of the Code of Conduct for Public Officers set out at the Fifth Schedule to the Constitution and the general law of Nigeria, Governors have a duty not to solicit or accept bribes, inducements or secret profits.

20. The laws of Nigeria also include the following criminal provisions:

   a. Under section 383 and 390 of the Nigerian Criminal Code Act, theft or conversion of government property by a government employee is a felony.

   b. Under the Nigerian Corrupt Practices and other Related Offences Act 2000 (2000 Act No. 5), it is a felony for a public official corruptly to ask for, receive or obtain property or benefit of any kind for himself or for any other person.

   c. Under section 19 of the Nigerian Corrupt Practices and other Related Offenses Act (2000 Act No. 5), it is a felony for any public officer to use "his office or position to gratify or confer any corrupt or unfair advantage upon himself".

*Diepreye Solomon Peter Alamieyeseigha*

21. On or about May 29, 1999, Alamieyeseigha took office as Governor of Bayelsa State, and was reelected to a second four-year term in approximately April 2003. Alamieyeseigha served as Governor of Bayelsa State from approximately May 29, 1999, until his impeachment and dismissal from office in December 2005.

22. Alamieyeseigha made at least three financial disclosure declarations in Nigeria between 1999 and 2005.

23. The official salary of the Governor of Bayelsa State was less than 100,000 Naira per month (approximately $810 based average exchange rate during the relevant periods) between 1999 and 2005. The total salary paid to Alamieyeseigha for the entire period of 1999 to 2005, while he held the office of Governor of Bayelsa State, was less than $81,000 and his total declared income from all sources was less than $248,000.

24. In approximately May 1999, Alamieyeseigha made a financial declaration which disclosed assets with a total value of 71.7 million Nigerian Naira (approximately $471,865.75), income of 1.5 million Naira (approximately $9,871.67), and no bank accounts outside Nigeria.

25. In April 2003, coinciding with his reelection as Governor, Alamieyeseigha made another financial declaration which disclosed assets with a total value of 110.6 million Naira (approximately $727,871.03), income of 4.67 million Naira (approximately $30,733.79), and no bank accounts outside Nigeria.

26.     In December 2003, Alamieyeseigha declared assets with a total value of 120.1 million Naira (approximately $790,391.59), income of 5.69 million Naira (approximately $37,446.53), and no bank accounts outside Nigeria.

27.     On or about October 1, 1999, an associate of Alamieyeseigha incorporated Solomon & Peters, Limited (hereinafter "S&P") in the British Virgin Islands on behalf of, and at the request of, Alamieyeseigha, who was the sole shareholder, director, and secretary. "Solomon" and "Peter" are Alamieyeseigha's two middle names.

28.     In contrast to his government salary and his asset declarations, between December 1999 and July 2003 while he served as Governor, Alamieyeseigha acquired at least four real properties in the United Kingdom having a total value exceeding £4.7 million (approximately $8.8 million at the December 31, 2005 exchange rate). These properties were held in the name of S&P.

29.     Between September 1999 and December 2005, Alamieyeseigha and Santolina Investment Corporation (hereinafter "Santolina"), a company owned and controlled by Alamieyeseigha, received into personal, corporate, and trust accounts at several banks outside of Nigeria with a value of approximately $3 million.

*U.K. and Nigerian Legal Proceedings Involving DSP Alamieyeseigha*

30.     In September 2005, Alamieyeseigha was arrested at Heathrow Airport near London on suspicion of money laundering. During a search of Alamieyeseigha's London residence, Metropolitan Police officers found approximately $1,574,000 in cash in a mixture of U.K. sterling, Euros and U.S. dollars.

31.     In conjunction with the filing of criminal charges against Alamieyeseigha, on September 30, 2005, the United Kingdom's Crown Prosecution Service obtained a restraining order affecting all of Alamieyeseigha's assets wherever located, world-wide. This restraining order prohibited Alamieyeseigha from "in any way dispos[ing] of or deal[ing] with or diminish[ing] the value of any of his assets whether they are in or outside England or Wales." This order was served on Alamieyeseigha on October 6, 2005.

32.     Alamieyeseigha was subsequently released on bail. In November 2005, in violation of his bail conditions, Alamieyeseigha left the United Kingdom and returned to Nigeria. Alamieyeseigha remains a fugitive from U.K. criminal proceedings.

33.     After his return to Nigeria, Alamieyeseigha was impeached and removed from office on or about December 9, 2005.

34.     Alamieyeseigha was subsequently indicted in Nigeria on charges of issuing false asset declarations and money laundering. Alamieyeseigha's shell corporations Santolina and S&P were also indicted in Nigeria on charges of money laundering.

35. On or about January 17, 2006, the Federal Republic of Nigeria filed a civil suit against Santolina, S&P, Alamieyeseigha and others in the High Court of Justice, Chancery Division, of the Royal Courts of Justice, Strand, London, in the United Kingdom.

36. On or about July 25, 2007, Alamieyeseigha entered a guilty plea as to six counts of knowingly making a false declaration by omitting to declare his interest in real properties in Nigeria and South Africa and the aforementioned "Peter Alamieyeseigha" Bank of America account in the United States. The Nigerian court convicted Alamieyeseigha on or about July 26, 2007, imposing a sentence of two years imprisonment and forfeiture of the property involved in the offenses for which he was convicted.

37. On or about July 25, 2007, Alamieyeseigha entered into a plea agreement on behalf of his shell corporations, S&P and Santolina, entering a guilty plea to four counts of money laundering by S&P and a guilty plea to fifteen counts of money laundering by Santolina. On or about July 26, 2007, the Nigerian court convicted S&P, Santolina, and other corporate entities of money laundering and ordered the companies to be wound up. The Nigerian court also ordered the forfeiture of real estate located in Nigeria and three properties held in the name of S&P in London. In addition, the Nigerian court ordered the forfeiture of sums of monies totaling more than $3,700,000.

38. After the convictions in Nigeria, the U.K. High Court awarded the London real properties and the Santolina accounts to Nigeria in two rulings in 2007 and 2008. The High Court found that the Santolina accounts and three London properties held in the name of S&P represented bribes or were traceable to bribes paid to Alamieyeseigha by contractors with Bayelsa State.

*Ehigie Uzamere*

39. Ehigie Uzamere is an associate of Alamieyeseigha who had business interests in contracts with the Bayelsa State Government and a history of conducting financial transactions with and for the benefit of Alamieyeseigha and his family.

40. Alamieyeseigha identified Uzamere, in statements to the EFCC, as a friend who assisted him in mostly family matters in Nigeria and America. Alamieyeseigha also acknowledged that Uzamere's companies had contracts with the Bayelsa State Government during his term in office.

41. In statements to the Economic and Financial Crimes Commission (EFCC) of Nigeria, Uzamere admitted executing, through his corporate entities, contracts worth the Nigerian Naira equivalent of millions of dollars with the Bayelsa State Government while Alamieyeseigha was Governor. He also admitted to buying property in Nigeria from Alamieyeseigha and making the payments "piece meal" to Alamieyeseigha's company Santolina.

42. Uzamere later admitted to an EFCC investigator that in 2004 Alamieyeseigha's Nigerian attorney arranged to transfer ownership and control of Temat Associates to Uzamere in

7

a deliberate attempt to foil an EFCC investigation into disbursements from the Bayelsa State treasury. All documents linking Alamieyeseigha to Temat were to be destroyed and construction contracts supporting the payments fabricated. Uzamere also confessed that the purchase of the property from Alamieyeseigha referenced in paragraph 38 was a fabrication designed by Alamieyeseigha's attorney to justify the payments from Temat to Santolina.

43. Financial records show that Uzamere transferred large amounts of money to Alamieyeseigha's children during the period that Alamieyeseigha held the office of Governor.

44. While Alamieyeseigha was Governor of Bayelsa State, Uzamere laundered money illegally diverted from Bayelsa State Government funds. Among other transactions, Uzamere facilitated Alamieyeseigha's purchase of real property located in Rockville, Maryland, in the name of his shell company, S&P.

45. In November 2001, Uzamere received approximately $360,000 into his personal bank account at Riggs Bank, which funds, upon inspection of financial records, are traceable to Bayelsa State Government funds. Uzamere used that money to purchase a $341,000 cashier's check, which was used by Domingo Obende as a straw purchaser to acquire the Maryland Property. Less than a month after closing, Obende arranged to transfer title to the property to Alamieyeseigha, which was eventually transferred to S&P in January 2003. Acting on Alamieyeseigha's behalf, Uzamere hand-carried a letter from Obende in London to Obende's U.S. real estate agent notifying him of the transfer. Uzamere then acted as Alamieyeseigha's "representative" for portions of this layering transaction.

*Money Laundering Activity Involving the Defendant Property*

46. In the civil proceeding in the United Kingdom, Alamieyeseigha admitted opening account no. 005482562491 at Bank of America in the name of Peter Alamieyeseigha in December 2001. Peter is one of Alamieyeseigha's middle names. According to Alamieyeseigha's sworn statement he opened the account with the assistance of two "friends" who made deposits into the account "from time to time".

47. Between December 3, 2004, and April 26, 2005, Uzamere transferred $414,000 from account no. 071079560565 at JP Morgan Chase Bank in Queens, New York, to the "Peter Alamieyeseigha" account at Bank of America. The transactions included a $150,000 wire transfer on December 3, 2004, a $200,000 wire transfer on February 24, 2005, and a $64,000 check deposited on April 26, 2005.

48. In addition, between April 18, 2005 and April 21, 2005, three cash deposits, each in the amount of $9,000, were made into the "Peter Alamieyeseigha" account at Bank of America. Based upon my, experience these cash transactions below the $10,000 reporting threshold for currency transactions are indicative of possible currency structuring in violation of 31 U.S.C. § 5322.

49. Notwithstanding the U.K. restraining order served on Alamieyeseigha in October 2005 directing him not to deal with, dispose of, or diminish his assets world-wide, between

March 10, 2006, and March 24, 2006, four checks were drawn on the "Peter Alamieyeseigha" account for payment to Nicholas Aiyegbemi. Each check was made in the amount of $96,520, for a total of $386,080.

50. On April 3, 2006, account no. Z44-343021 was opened in the name of Nicholas Aiyegbemi d/b/a Inadinov and Co. OAO at Fidelity Brokerage Services, LLC., Boston, Massachusetts. The person opening the Fidelity account presented a passport purportedly issued by Great Britain in the name of "Nicholas Aiyegbemi" with the number 702466006. U.S. entry records associate that passport number with another name and do not report anyone using the name Aiyegbemi entering the country. U.K. passport records do not show the number of the passport presented to be registered to someone named Nicholas Aiyegbemi.

51. On April 10, 2006, the four checks drawn on the Peter Alamieyeseigha account identified in paragraph 44 were deposited into account no. Z44-343021 at Fidelity.

52. On April 13, 2006, and again on April 14, 2006, two more checks were drawn on the Peter Alamieyeseigha account for $96,520 each and also made payable to Aiyegbemi. However, these checks were not successfully negotiated.

53. In May 2006, the United States obtained an order in the United States District Court for the District of Columbia restraining the Defendant Property. That order was based on the United Kingdom restraining order. The U.S. order was vacated at the request of the United States in November 2010. There has been no substantial account activity since 2006 and the Defendant Property remains traceable to the checks deposited at that time.

### IV. CONCLUSION

54. As set forth above, while he was Governor, Alamieyeseigha's net worth increased by approximately $12 million at a time when he had a total declared income of $248,000. Despite a statutory prohibition on holding accounts outside Nigeria, Alamieyeseigha concealed most of his wealth abroad. Ultimately, Alamieyeseigha was impeached and pled guilty to asset declaration violations on his own behalf and money laundering offenses on behalf of his corporate shells in Nigerian criminal proceedings. In proceedings before the U.K. High Court, Almieyeseigha's property was found to be the proceeds of bribes paid to him by persons transacting business with Bayelsa State.

55. Alamieyeseigha's associate, Ehigie Uzamere, had a financial interest in contracts with Bayelsa State, has admitted to helping Alamieyeseigha cover up his corrupt conduct, and is deeply involved in Alamieyeseigha's laundering of diverted Bayelsa State assets in the United States. Uzamere's account at JP Morgan Chase in New York was the primary source of funds into Alamieyeseigha's account at Bank of America, an account which Alamieyeseigha failed to disclose as required under Nigerian law. The monies deposited into Alamieyeseigha's Bank of America account were transferred, in violation of a U.K. restraining order, to the Defendant Fidelity account, which was opened with a fraudulent passport. There the monies have remained without substantial account activity since their deposit due to a prior restraint action.

56.   Based on the foregoing, probable cause exists to believe that the contents of account number Z44-343021 held at Fidelity Brokerage Services, LLC., Boston, Massachusetts in the name of Nicholas Aiyegbemi d/b/a Inadinov and Co. OAO and any assets traceable thereto were derived from bribery, kickbacks, and misappropriations received by Alamieyeseigha in violation of Nigerian law and are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in money laundering transactions conducted in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). The underlying specified unlawful activity being "bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official" in violation of 18 U.S.C. § 1956(c)(7)(B)(iv).

57.   There is also probable cause to believe that the Defendant Property is subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), because it constitutes or is derived from proceeds traceable to passport fraud in violation of 18 U.S.C. §§ 1543 and 1544.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 8, 2011.

_____
Cynthia A. Coutts
Special Agent
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

10